# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Subchapter V-Chapter 11 |
| **R.A.R.E. Corporation** | Bankruptcy No. 24-02127 |
| Debtor. | Hon. David D. Cleary |

## DEBTOR'S ~~SECOND~~THIRD AMENDED PLAN OF REORGANIZATION, DATED ~~JULY 11~~AUGUST 27, 2025

William J. Factor (6205675)
Lars A. Peterson (6293551)
**FACTORLAW**
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel:      (312) 878-6976
Fax:      (847) 574-8233
Email:   wfactor@wfactorlaw.com
          lpeterson@wfactorlaw.com

*Counsel for R.A.R.E. Corporation,*
*   Debtor and Debtor-in-Possession*

## BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

### A. Description and history of the Debtor's business.

R.A.R.E. Corporation (the "***Debtor***") is an Illinois corporation.  The Debtor operates a rental vehicle transporter service at O'Hare International Airport ("***O'Hare***") in Chicago, Illinois.

For approximately the last 19 years, the Debtor has contracted with the Hertz Corporation ("***Hertz***") to transport rental vehicles that have been returned by Hertz customers from the Hertz drop-off garage to the Hertz vehicle cleaning and reconditioning facility, also located at O'Hare.  In addition, the Debtor transports cleaned and reconditioned vehicles from the cleaning facility back to the Hertz customer pickup garage, where the Debtor is responsible for "stalling" the vehicles in designated parking spaces and entering the vehicle's exact location into a computerized tracking system.  On occasion, during periods of peak demand, the Debtor also provides vehicle cleaning services to Hertz.

To perform these transporting services, the Debtor uses a workforce of approximately 40 workers (the "***Workers***"), who provide services to the Debtor on a 1099 contract basis.

The Debtor filed for relief under chapter 11 of the Bankruptcy Code on February 15, 2024 (the "***Petition Date***"). The Debtor continues to operate its business and manage its affairs as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  The Debtor has made the Subchapter V Election. William Avellone was initially appointed as Subchapter V Trustee.  Subsequently, Ira Bodenstein was appointed as successor Subchapter V Trustee.

### B. Liquidation analysis.

To confirm the plan, the Court must find that all creditors and equity interest Holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest Holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

### C. Ability to make future plan payments and operate without further reorganization.

The plan proponent must also show that it will have enough cash over the life of the plan to make the required payments and operate the Debtor's business.

The Debtor has provided projected financial information for the next five years as Exhibit B.  These projections are based upon the anticipated extension and

continuation of the contractual relationship between the Debtor and Hertz into and throughout the plan period.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) over the next five years of $292,813.45 .

The final Plan payment is expected to be paid five years after Plan confirmation, in or around September, 2030.

**You should consult with your accountant or other financial advisor if you have any questions about these projections.**

## ARTICLE 1.SUMMARY.

This plan of reorganization (the "***Plan***") under chapter 11 of the Bankruptcy Code (the "***Code***") proposes to pay the Debtor's creditors from cash flow from operations.

This Plan provides for one class of secured claims, one class of cure claims, one class of non-priority unsecured claims, and one class of equity interest Holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 4.9 cents on the dollar. This Plan also provides for the payment of priority unsecured claims over one year, and administrative expenses over ~~two and a half~~3.25  years.

All creditors and equity security Holders should refer to Articles 3, 4, and 5 of this Plan for information regarding the precise treatment of their claim.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.***

## ARTICLE 2.DEFINITIONS AND RULES OF CONSTRUCTION.

2.1.  ***Definitions.*** The capitalized terms used herein have the respective meanings set forth below. Any term used but not defined herein has the meaning ascribed to that term, if any, in the Code.

2.1.1.  "Allowed" means an administrative expense claim, a priority tax claim, an other priority claim, a Fee Claim, a secured claim, an unsecured claim, or an interest, or any portion thereof, that: (a) has been allowed by a final non-appealable order that has not been reconsidered as of the Plan's effective date; (b) was listed in the Schedules as neither disputed, nor contingent, nor unliquidated, has not been superseded by a timely Proof of Claim or Interest, and for which no objection has been filed by any party in interest as of the Plan's

Effective Date; or (c) is set forth in a timely filed Proof of Claim or Interest in a liquidated amount, as to which no objection has been timely filed.

2.1.2.   "Assets" means all real, personal, and intangible property and rights of the Debtor and its Estate as of the Plan's effective date, and include, without limitation, all of the Debtor's real property and improvements and fixtures thereon, trademarks, trade secrets, cash, accounts receivable, goods, equipment, inventory, chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, tax refunds, Retained Actions (including causes of action), claims and rights of any kind, wherever situated, together with the proceeds thereof.

2.1.3.   "Avoidance Actions" means claims and causes of action available to the Debtor pursuant to §§ 329, 510, and 544 through 553 of the Code. Avoidance Actions include, without limitation, (i) suits to recover any transfers made by the Debtor within 90 days of the Petition Date, to the extent the transfer was made on account of an antecedent debt to a non-insider creditor, including those payments reflected in the Debtor's Schedules, (ii) suits to recover any transfers made by the Debtor within one year of the Petition Date, to the extent the transfer was made on account of an antecedent debt to an insider creditor, including those payments reflected in the Debtor's Schedules, and (iii) suits to recover any transfer made by the Debtor for less than reasonably equivalent value, or to avoid an obligation incurred for less than reasonably equivalent value, at a time when the Debtor was insolvent, rendered insolvent by the transfer or obligation, undercapitalized or unable to pay its debts as they became due, including those payments reflected in the Debtor's Schedules.

2.1.4.   "Ballot" means the ballot accompanying the Plan upon which creditors shall have indicated their acceptance or rejection of the Plan and have elected or consented to certain treatment under the Plan.

2.1.5.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as heretofore and hereafter amended.

2.1.6.   "Bar Date" means May 31, 2024, which is the date set by the Court as the deadline for filing proof of claims against the Debtor's Estate.

2.1.7.   "Case" means the bankruptcy case commenced by the Debtor in the Court on the Petition Date under chapter 11 of the Code, assigned Case No. 24-02127.

2.1.8.   "Cash" means (i) currency, a certified check, cashier's check or a wire transfer of good funds from any source or (ii) a check from the Debtor or Reorganized Debtor.

2.1.9.   "Class" means a class of claims or interests described in Article 3 of the Plan.

2.1.10.  "Code" means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

2.1.11.  "Court" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or such other court having jurisdiction over the Case.

2.1.12.  "Debtor" means R.A.R.E. Corporation.

2.1.13.  "Estate" means the bankruptcy estate created at the time of the Debtor's bankruptcy filing, containing all property of the Debtor pursuant to § 541 of the Code.

2.1.14.  "Fee Claim" means a Claim against the Debtor by a professional pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Code or otherwise relating to services performed and expenses incurred after the Petition Date and prior to and including the Plan's effective date.

2.1.15.  "Holder" means a person that is the beneficial owner of a claim or interest. For purposes of voting to accept or reject this Plan, a person must be a Holder as of the Voting Record Date. For purposes of a distribution, a person must be a Holder as of the Plan's effective date.

2.1.16.  "Law Firm" means The Law Office of William J. Factor, Ltd.

2.1.17.  "Litigation Assets" means the lawsuits, counterclaims, crossclaims, and other similar rights held by the Debtor as of the Plan's effective date.

2.1.18.  "Lost Creditor" means the Holder of an allowed claim whose distribution has been returned to the Reorganized Debtor as undeliverable and who fails to notify the Reorganized Debtor in writing of a current address within 90 days after the date such distribution was first mailed.

2.1.19.  "Petition Date" means February 15, 2024.

2.1.20.  "Plan" means this Plan of Reorganization, either in its present form or as it may hereafter be altered, amended, or modified from time to time.

2.1.21.  "Proof of Claim" means a statement in writing of a Claim on, or consistent with, the Court's Official Form 10 proof of claim form against the Debtor filed with the Court.

2.1.22.  "Quarterly Unsecured Creditor Account Contribution" means, for any quarter, the amount shown on Exhibit B as the estimated Plan distributions to Class 3 Unsecured claims.

2.1.23.  "Quarterly Payment Date" means the day that is 30 days after the last calendar day of a quarter: April 30, July 30, October 30, and January 30.

2.1.24.  "Rejection Damage Claim" means a Claim, if any, by a party to a prepetition executory contract or an unexpired lease of non-residential real

property with the Debtor, which has not been assumed by the Debtor pursuant to this Plan or pursuant to a prior final non-appealable order.

2.1.25. "Retained Action" means all causes of action and claims that are part of the Estate and that are being transferred to the Reorganized Debtor on the Plan's effective date, including, without limitation, all Litigation Assets and all Avoidance Actions.

2.1.26. "RFAE" means a request for the allowance of an administrative expense pursuant to § 503(a) of the Code.

2.1.27. "Schedules" means, collectively, the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtor as required by § 521 of the Code and Bankruptcy Rule 1007, as such schedules and statements may be supplemented or amended.

2.1.28. "Unsecured Creditor Account" means a bank account established by the Reorganized Debtor after the Plan's Effective Date for the benefit of the Unsecured Creditor Account Beneficiaries.

2.1.29. "Unsecured Creditor Account Beneficiaries" means the Holders of an allowed Class 3 claim.

2.1.30. "Voting Record Date" means July 15, 2025, the date on which the Court authorized solicitation of acceptances of this Plan.

2.2. ***Rules of construction.*** The rules of construction contained in § 102 of the Code apply to the construction of the Plan. Whenever the context requires, words denoting the singular number include the plural number and *vice versa*, and words denoting one gender include the other gender and *vice versa*. All exhibits and schedules attached to this Plan are incorporated herein.

### ARTICLE 3.CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1. ***Classification of Claims and Interests.***

3.1.1. ***Class 1.*** The claim of Bill Me Later, Inc., to the extent Allowed as a secured claim under § 506 of the Code.

3.1.2. ***Class 2.*** The claim of Hertz for amounts owed by the Debtor to Hertz under the Master Services Agreement effective 11/9/2012, as amended, for vehicle damage and overtime worked by Hertz employees (the "Hertz Cure Claim"). The Debtor agrees to the allowance of the Hertz Cure Claim in the amount of $95,551.03.

3.1.3. ***Class 3.*** All non-priority unsecured claims Allowed under § 502 of the Code.

3.1.4. ***Class 4.*** Equity interests in the Debtor.

3.2.   ***Empty classes.*** To the extent there are no claims or creditors in a particular class, the Debtor reserves the right without any further notice to eliminate such class solely for purposes of determining whether the Plan meets the requirements for confirmation under the Code.

## ARTICLE 4. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES.

4.1.   ***Unclassified claims.*** Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.[1]

4.2.   ***Administrative expense claims.*** Each Holder of an administrative expense claim allowed under § 503 of the Code will be paid as follows.

4.2.1.   Ordinary course administrative expense claims. Except as otherwise expressly provided for in the Plan, the Debtor will pay administrative expense claims incurred in the ordinary course of its business according to the existing credit terms in effect between the Debtor and the Holder of the ordinary course administrative expense claim.

4.2.2.   Fee Claim of Subchapter V Trustee. The Allowed Fee Claim of any Subchapter V Trustee will be paid within 30 days of the later of (i) the Plan's effective date, or (ii) the date such Fee Claim is allowed.

4.2.3.   Other administrative expense claims. All other administrative expense claims, including Fee Claims (other than the Fee Claim of any Subchapter V Trustee), will be paid in ~~ten~~thirteen quarterly installments, commencing within 30 days of the later of (i) the Plan's effective date, (ii) the date the administrative expense claim is allowed, or (iii) the date the administrative expense claim becomes payable pursuant to any agreement between the Debtor or the Reorganized Debtor and the Holder of the administrative expense claim.

4.2.4.   Deadline for filing administrative expense claims. Except as otherwise provided by an order entered in the Case or by this Plan, and except for administrative expense claims incurred in the ordinary course, the deadline for any entity to assert an administrative expense claim is 30 days after the effective date of this Plan. Administrative expense claims that are required to be filed within that period and are not so filed will be deemed untimely and not entitled to a distribution or treatment under the Plan.

4.2.5.   Allowance of administrative expense claims. An administrative expense claim other than a Fee Claim that has been timely and properly filed becomes an allowed administrative expense claim only if after 90 days has passed from the Plan's effective date, and then only to the extent an objection has not been

---

[1] The Debtor believes that the only priority unsecured claims are priority tax claims.

filed thereto. If an objection is filed by the 90th day after the Plan's effective date, such administrative expense claim becomes an allowed administrative expense claim only to the extent allowed by a final order.

4.3.   ***Priority tax claims.*** Each Holder of an allowed priority tax claim will be paid in 4 quarterly installments, with interest at the rate of 5% per annum, beginning on the first Quarterly Payment Date after the Plan's effective date, provided, however, that the Debtor shall have the right to pre-pay any allowed priority tax claim or to enter into a compromise with any Holder of a priority tax claim.

4.4.   ***Statutory fees.*** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

## ARTICLE 5. TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.

5.1.   The treatment of claims and interests under this Plan is summarized in the following table.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1: Bill Me Later, Inc. Secured Claim | Impaired | The Class 1 Claim will be paid in full over five years, with interest. |
| Class 2: Hertz Cure Claim | Impaired | The Class 2 Claim will be paid in full over five years, without interest. |
| Class 3: General Unsecured Creditors | Impaired | Class 3 Claims will be paid an estimated distribution of 4.9% over five years. |
| Class 4: Equity Interests | Unimpaired | The Holders of Class 4 interests will retain those interests. |

5.2.   ***Treatment of unimpaired classes.***

5.2.1.   *Class 4 (Equity Interests).* Holders of Class 4 interests will retain their interests.

5.3.   ***Treatment of impaired classes.***

5.3.1.   *Class 1 (Bill Me Later, Inc. Secured Claim).*[2]

5.3.1.1. Payments. In full satisfaction of Bill Me Later, Inc.'s secured claim, the Holder thereof will receive 20 equal quarterly payments with interest at the rate of 5% per annum. The Debtor may pre-pay the allowed Class 1 claim or enter into a compromise with the Holder of the Class 1 claim.

5.3.1.2. Date of payments. Payments will commence on the first Quarterly Payment Date after the Plan's effective date, or another date agreed to by Bill Me Later, Inc. and the Debtor, and will continue to be made on each succeeding Quarterly Payment Date until the Class 1 claim is paid in full.

5.3.1.3. Retention of liens. Bill Me Later, Inc. will retain any valid, non-avoidable liens with the priority accorded thereto under applicable state or federal law.

5.3.2.   *Class 2 (Hertz Cure Claim).*

5.3.2.1. Payments. In full satisfaction of the Hertz Cure Claim, the Holder thereof will receive 20 unequal quarterly payments equaling, in the aggregate, 100% of the Hertz Cure Claim, as set forth in Exhibit B.  No interest will be paid. The Debtor may pre-pay the allowed Class 2 claim or enter into a compromise with the Holder of the Class 2 claim.

5.3.2.2. Date of payments. Payments will commence on the first Quarterly Payment Date after the Plan's effective date, or another date agreed to by Hertz and the Debtor, and will continue to be made on each succeeding Quarterly Payment Date until the Class 2 claim is paid in full.

5.3.3.   *Class 3 (General Unsecured Creditors).* For distribution purposes, each Holder of an allowed Class 3 claim shall be an Unsecured Creditor Account Beneficiary and, as such, shall receive a pro rata share of the funds in the Unsecured Creditor Account at the same time and at the same percentage as the other Unsecured Creditor Account Beneficiaries until the 20th Quarterly Payment Date after the Plan's effective date, at which time the Debtor's Plan will conclude.

5.4.   ***Agreement to less favorable treatment.*** Any Holder of an allowed claim may agree to less favorable treatment than is provided for that Holder in this Plan. That less favorable treatment will then supersede the Plan's treatment of the Holder described above. The obligations of the Debtor or the Reorganized Debtor under this Plan may be prepaid in full or in part without penalty.

## ARTICLE 6.ALLOWANCE AND DISALLOWANCE OF CLAIMS.

6.1.   ***Bar Date and reservation of rights.***

---

[2] The Debtor believes Bill Me Later, Inc. is the only Holder of a secured claim.

      6.1.1.   *Unsecured Claims.* The deadline for unsecured creditors to file a Proof of Claim is May 31, 2024.

      6.1.2.   *Administrative Expense Claims.* The deadline for the Holders of administrative expense claims to file proof thereof is 30 days after the Plan's effective date (an "RFAE"). The Debtor shall send to all parties in interest a notice advising them of the deadline for filing administrative expense claims.

      6.1.3.   *Objection deadline.* Subject to any prior orders entered in the case, the Debtor shall have 90 days after the Plan's effective date or after a proof of claim has been filed, whichever is later, to file an objection to any claim other than an RFAE, and 30 days after an RFAE has been filed or 30 days after the Plan's effective date to file an objection to any RFAE. Each deadline may be extended upon motion to the Court. A failure by the Debtor to examine or object to any claim for purposes of voting shall not be deemed a waiver of the Debtor's right to re-examine or object to the claim, in whole or in part, for any other purpose.

    6.2.   **Resolution of Disputed Claims.** To the extent the Debtor has commenced a proceeding objecting to a claim or RFAE, the Reorganized Debtor shall, upon the Plan's effective date, automatically and with no further action required supplant the Debtor as the party pursuing such objection and shall be vested with all of the rights and obligations of the Debtor in such proceeding.

    6.3.   **No payments.** Notwithstanding any other provisions of this Plan, no payments or distributions shall be made on account of any disputed claim or disputed RFAE until and unless such disputed claim or disputed RFAE becomes an allowed claim or allowed RFAE, and then only to the extent that it becomes Allowed. No distributions shall be made to any Holder of an Allowed claim in a particular Class unless and until all objections to claims in that Class have been resolved by a final non-appealable order.

    6.4.   **Claim Dispute Resolution Procedures.** If the Reorganized Debtor has commenced a proceeding objecting to a Claim or RFAE after the Plan's effective date, or has been substituted into such a proceeding previously involving the Debtor, the resolution of any disputes regarding such claims or RFAEs shall be subject to the following parameters:

      6.4.1.   *Less than $10,000.* If the face amount of a claim is less than $10,000, the Reorganized Debtor shall be authorized to settle such disputed claim or disputed RFAE without the need for further Court approval or further notice.

      6.4.2.   *Greater than $10,000.* If the face amount of a claim is greater than or equal to $10,000, the Reorganized Debtor shall file a proposed settlement motion with the Court with notice and hearing consistent with the Federal Rules of Bankruptcy Procedure.

## ARTICLE 7.PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

7.1. ***Rejection process.*** As of the Plan's effective date, any and all executory contracts and unexpired leases are deemed rejected by the Debtor unless such contract or lease is (i) expressly assumed by the Debtor with Bankruptcy Court approval on or before the Plan's effective date, (ii) is the subject of a motion to assume pending on the Plan's effective date, or (iii) is identified on a list to be filed with the Bankruptcy Court, on or before the date the Plan is confirmed, as to be assumed. An initial list of executory contracts and unexpired leases to be assumed is attached as Exhibit C.

7.2. ***Rejection disputes.*** In the event that after the Plan's effective date, a party to an alleged executory contract or unexpired lease contends that such contract or lease was deemed rejected by operation of the Plan, the Reorganized Debtor (i) has the right to dispute such contention and to seek an order from the Court regarding whether such contract or lease was executory or unexpired and (ii) has the right to assume such lease or contract if it is determined by the Court that such contract or lease is executory or unexpired.

7.3. ***Rejection claims.*** If an executory contract or unexpired lease is rejected as of the Plan's effective date pursuant to the Plan, the non-Debtor party to the executory contract or lease may file a Proof of Claim for damages by reason of the rejection. Any Proof of Claim with respect to claims under an executory contract or unexpired lease that has been rejected must be filed with the Court within 30 days after the date of the rejection. A claim under an executory contract or unexpired lease which has been rejected shall constitute a Class 3 claim, as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to, or results in, a claim, or deemed a waiver by the Reorganized Debtor of any objections to such claims if asserted.

## ARTICLE 8.MEANS FOR IMPLEMENTATION OF THE PLAN.

8.1. ***Authorization***. From and after the Plan's effective date, the Reorganized Debtor shall take all steps and execute all documents necessary to effectuate the Plan.

8.2. ***Disbursements***. The Reorganized Debtor will make all disbursements under the Plan, regardless of whether the plan is confirmed consensually under 1191(a) or non-consensually under 11191(b).

8.3. ***Unsecured Creditor Account.***

8.3.1. *Establishment of the Unsecured Creditor Account.* After the Plan's effective date, the Reorganized Debtor shall establish and administer a separate bank account that shall be designated the "Unsecured Creditor Account" on the books and records of the Reorganized Debtor. Only Holders of Class 3 claims (the "***Unsecured Creditor Account Beneficiaries***")—and not the Reorganized Debtor or any other person—has any interest in the property held in the Unsecured Creditor Account and such property will be segregated from any other property owned by the Reorganized Debtor and held solely for the benefit of the Unsecured Creditor Account Beneficiaries. The funds in the Unsecured Creditor Account will not be subject to any encumbrances, liens, levies, or garnishments. Any funds remaining in the Unsecured Creditor Account after the last regularly scheduled distribution date under the Plan becomes the sole and exclusive property of the Reorganized Debtor.

8.3.2. *Contributions to the Unsecured Creditor Account.* After the Plan's effective date, the Reorganized Debtor shall make the contributions to the Unsecured Creditor Account set forth herein. The Unsecured Creditor Account will be funded by the Debtor's Quarterly Unsecured Creditor Account Contribution until the 20th Quarterly Payment Date after the Plan's effective date, after which time the Reorganized Debtor will no longer have any obligation to the Unsecured Creditor Account Beneficiaries. On the 15th day after the first full calendar quarter following the Effective Date, and on the 15th day after each subsequent calendar quarter, (collectively, the "***Unsecured Contribution Dates***") the Debtor shall contribute the requisite funds to the Unsecured Creditor Account.

8.3.2.1. *Distributions from Unsecured Creditor Account.* The Reorganized Debtor shall make distributions of funds from the Unsecured Creditor Account on each Quarterly Payment Date (collectively, the "***Unsecured Distribution Dates***") until the 20th Quarterly Payment Date after the Plan's effective date. The amount of the funds in the Unsecured Creditor Account that will be distributed on each of the Unsecured Distribution Dates shall be determined by the Reorganized Debtor in the exercise of its reasonable discretion. Notwithstanding the foregoing, if the funds in the Unsecured Creditor Account are not sufficient to make a distribution of greater than 1% to the Unsecured Creditor Account Beneficiaries that are to receive a distribution on a Quarterly Payment Date, such funds will be retained in the Unsecured Creditor Account and distributed on the next Quarterly Payment Date for which there are sufficient funds to make a distribution of greater than 1%. Additionally, no distributions shall be made from the Unsecured Creditor Account until such time as all objections to claims in Class 3 have been resolved by a final non-appealable order.

8.3.3. *Satisfaction of Claims.* Upon the payment on the 20th Quarterly Payment Date after the Plan's effective date, the Reorganized Debtor shall have no

further obligations under this Plan to any Holder of a Class 3 claim, including any obligation to deposit funds in the Unsecured Creditor Account, and all Holders of allowed Class 3 claims shall have no further or continued rights or standing under this Plan. At such time, the Reorganized Debtor may file, but is not required to file, a notice with the Court stating that one or more claims have been fully satisfied in accordance with the Plan and such notice shall be deemed to be a satisfaction of judgment.

8.4. ***Post–Effective Date Operations and Management.***

8.4.1. *Operations.* The Reorganized Debtor shall conduct business after the Effective Date and shall be managed by Rocky Eastland.

8.4.2. *Corporate action.* Each of the matters provided for in this Plan involving the corporate structure of the Reorganized Debtor or corporate action to be taken or required of the Reorganized Debtor, shall, as of the Plan's effective date, be deemed to have occurred, approved, authorized, and shall be effective as provided under this Plan without the requirement of any further action of any kind by the shareholders, directors, officers, members, managers, or board of the Reorganized Debtor or any affiliate thereof.

8.4.3. *Post-confirmation management and compensation.* After the Plan's effective date, the individuals listed in the Debtor's Statement of Financial Affairs as current officers or directors of the Debtor shall continue to serve as directors and officers of the Reorganized Debtor. Rocky Eastland's base compensation shall be $82,000, and may be increased or decreased at any time following Plan confirmation to reflect the overall financial performance of the Reorganized Debtor or market forces, but shall not be increased unless the Reorganized Debtor is successfully making the payments to creditors set forth in Exhibit B.

8.4.4. *Powers and duties of the Reorganized Debtor to implement the Plan.* From and after the Plan's effective date, the Reorganized Debtor shall implement this Plan, fulfilling its duties and obligations and exercising its rights and powers under this Plan and conducting any activity consistent with this Plan and orders entered in the Case and shall do so without further action, consent or approval of its board, officers, or managers, and in connection therewith shall be vested with authority and responsibility for, among other things:

- Prosecuting the Retained Actions for the benefit of parties in interest, including reviewing, objecting to, negotiating, settling, or otherwise compromising any Retained Action;

- Executing agreements, instruments, and other documents;

- Objecting to and resolving disputed claims;

- Making distributions and paying expenses of administering the Plan;
- Employing and compensating professionals;
- Exercising the rights, power and authority of the Reorganized Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law;
- Furnishing such information regarding administration of the Plan as may be requested by parties in interest unless otherwise ordered by the Court; and
- Closing the case.

8.4.5. *Post-confirmation transactions.* Nothing in this Plan or the Code shall impair or prevent the Reorganized Debtor from entering into a financing transaction, merging with another entity, selling substantially all of its assets or otherwise engaging in a transaction that further restructures the Reorganized Debtor (a "***Post-Confirmation Transaction***") without any further authorization from the Court or any other person, provided that the Reorganized Debtor or the person that engages in a Post-Confirmation Transaction with the Reorganized Debtor, as applicable, shall be obligated to perform the Reorganized Debtor's obligations hereunder and, in connection therewith, (i) make the distributions required hereunder to Holders of allowed claims that are not Unsecured Creditor Account Beneficiaries, including the Holders of allowed secured claims, allowed priority tax claims and allowed other priority claims, and (ii) if the assets of the Reorganized Debtor are sold, with respect to Unsecured Creditor Account Beneficiaries, continue to deposit funds in the Unsecured Creditor Account as required by this Plan until the 20th Quarterly Payment Date after the Plan's effective date.

8.4.6. *Standing.* From and after the Plan's effective date and continuing through the date on which a final decree closing the Case is entered pursuant to § 350 of the Code and Bankruptcy Rule 3022 (or, if the Case is re-opened, the date on which it is closed again), the Reorganized Debtor shall possess the rights of a party in interest pursuant to § 1109(b) of the Code for all matters arising in, arising under, or related to this case or the Reorganized Debtor.

8.4.7. *Post-confirmation professionals.* The Reorganized Debtor may retain such personnel or professionals (including, without limitation, legal counsel, financial advisors, or other agents) as it deems appropriate, and compensate such professionals without approval of the Court. Professionals so retained need not be "disinterested" as that term is defined in the Code and, specifically, may include, without limitation, the Law Firm. Professionals so retained also need not make any disclosures pursuant to Bankruptcy Rules 2014 and 2016. Notwithstanding the

foregoing, professionals retained by the Debtor in the case shall be entitled to compensation for services rendered prior to the Plan's effective date only in accordance with §§ 330 and 331 of the Code and any applicable Bankruptcy Rules or Local Rules.

8.5. ***Vesting and transfer of Assets to the Reorganized Debtor.*** Pursuant to § 1141(c) of the Code, and except as otherwise provided herein or in the confirmation order, on the Plan's effective date all Assets shall vest in the Reorganized Debtor free and clear of all liens, claims, encumbrances, and interests.

8.6. ***Closing the Case.*** As promptly as appropriate, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the case.

8.7. ***Retention of all causes of action, defenses, and counterclaims.*** Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with § 1123(b) of the Code, on and after the Plan's effective date, the Retained Actions are assigned and transferred to the Reorganized Debtor. Thereafter, the Reorganized Debtor is authorized to investigate, prosecute, settle, and compromise any Retained Action. The Reorganized Debtor may, in its sole discretion, pursue or refrain from pursuing the Retained Actions, as appropriate. For the avoidance of doubt, the Debtor does not intend to waive or release any claims held by the Estate and shall not waive or release any claims by failing to identify them in this Plan. The Reorganized Debtor also retains and may prosecute and enforce all defenses, counterclaims, and rights against or with respect to all claims asserted against the Debtor, the Estate, or the Reorganized Debtor.

8.8. ***Setoffs.*** The Debtor or, after the Plan's effective date, the Reorganized Debtor, may set off against any claim, and any distributions to be made pursuant to this Plan on account of such claim, claims of any nature whatsoever that the Debtor may have or have had against the Holder of the claim; provided, however, that neither the failure to do so nor the allowance of any claim hereunder will constitute a waiver or release by the Debtor or Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may have against the Holder.

8.9. ***Reservation of Rights.*** The Debtor and the Reorganized Debtor have, retain, reserve, and are entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had prior to the Petition Date as if the case had not been commenced. All of the Debtor's legal and equitable rights respecting any claim or RFAE may be asserted after the Plan's effective date to the same extent as if the case had not been commenced.

## ARTICLE 9.DELIVERY OF DISTRIBUTIONS.

9.1. ***Means of Cash payment.*** Cash payments made pursuant to this Plan will be in U.S. funds by the means agreed to by the Reorganized Debtor and payee

or, in the absence of an agreement, by check or other commercially reasonable means in the Reorganized Debtor's sole discretion.

9.2. ***Fractional cents.*** Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole cent (up or down).

9.3. ***Delivery of Distributions.*** Except as provided below for undeliverable distributions, distributions to Holders of allowed claims and allowed RFAEs shall be distributed by U.S. mail as follows: (i) at the addresses set forth on the Proof of Claim or RFAE filed by such Holders; (ii) at the addresses set forth in any written notices of address changes filed with the Court or delivered to the Reorganized Debtor after the date of any related Proof of Claim; or (iii) at the address reflected on the Debtor's schedules or the Reorganized Debtor's books and records, if no Proof of Claim is filed and no notice of a change of address has been filed or delivered to the Reorganized Debtor.

9.4. ***Distributions in complete satisfaction.*** The distributions and other treatments provided for each claim under this Plan are in complete satisfaction, discharge, and release of each such claim.

9.5. ***Escheat.*** Holders of claims have 180 days from the check date to negotiate the distribution checks issued in satisfaction of their claims. Despite any reference to "single distribution" elsewhere herein, payment on such checks shall be stopped and the funds shall escheat to the Estate for distribution to the other Holders within such Holder's class under the Plan who have cashed their distribution checks.

9.6. ***Changes of address.*** To be effective, any notice of change of address must (i) prior to the Plan's effective date, be filed with the Court, or (ii) following the Plan's effective date, be delivered to the Reorganized Debtor at the address set forth in the Plan.

9.7. **De minimis *Distributions.*** No Cash payment of less than $5.00 will be made by the Reorganized Debtor to any Holder of an Allowed Claim.

9.8. ***Undeliverable Distributions.*** The Reorganized Debtor shall hold onto all distributions that have been returned as undeliverable until such time as the Holder entitled to such distribution becomes a Lost Creditor or such Holder has been located. If the Holder that is entitled to such distribution notifies the Reorganized Debtor in writing of a new address within 90 days of the applicable date of the distribution, the Reorganized Debtor will mail the distribution and any further distributions to the new address for such Holder. A Lost Creditor will not have any further right to payment from the Reorganized Debtor, no longer has any right or claim to or in a distribution, and will be forever barred from receiving any distributions under the Plan. Pursuant to § 347(a) and Bankruptcy Rule 3011, any

property held for distribution to a Lost Creditor will be paid into the court and disposed of under chapter 129 of title 28. . Nothing contained in the Plan shall require the Debtor or the Reorganized Debtor to attempt to locate any Holder of an allowed claim.

9.9.  ***Compliance with tax requirements.*** To the extent applicable, the Debtor and the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

## ARTICLE 10.DISCHARGES AND RELEASES.

10.1.***No liability for solicitation or participation.*** As specified in § 1125(e) of the Code, persons that solicit acceptances or rejections of the Plan are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

10.2.***Binding effect of the Plan.*** Upon the Plan's effective date, the provisions of this Plan are binding on all persons to the fullest extent permitted under applicable law, expressly including, without limitation, all Holders of claims, and all Holders of administrative expense claims, other priority claims, or priority tax claims, and the successors and assigns of the foregoing, whether or not they accept this Plan or have filed a claim.

10.3.***Discharge.***

10.3.1.  If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

10.3.2.  If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

10.4.***Releases.*** Except as expressly provided in the Plan or the confirmation order, on the Plan's effective date, all of the Debtor's Creditors (present, future, contingent, non-contingent, matured, unmatured, secured, unsecured, asserted, unasserted, liquidated or unliquidated), employees, and former employees, and

their respective successors and assigns (each such person, a "**Releasor**"),shall unconditionally and irrevocably release and discharge and are deemed to unconditionally and irrevocably release and discharge (i) the Debtor and (ii) the Reorganized Debtor (the entities and persons referred to in clauses (i)-(ii) are collectively referred to as the "***Releasees***"), from any and all Claims, obligations, guarantees, suits, judgments, damages, rights, causes of action or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Claim or Equity Interest of such Person against the Debtor or any other matter in any way related to, or arising from, the Debtor or the operation of the Debtor, the administration of the Case, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation and consummation of the Plan (the "***Released Claims***") and the confirmation order shall enjoin the commencement or prosecution by any Person, whether directly or derivatively, of the Released Claims, except that the Reorganized Debtor will continue to be liable for any obligations imposed by this Plan.

10.5.***Hertz Release.*** Upon occurrence of the Plan's effective date, the Debtor, on behalf of itself and the Debtor's bankruptcy estate, hereby irrevocably and unconditionally releases and forever discharges The Hertz Corporation, including its affiliates, subsidiaries, predecessors, successors, assigns, officers, directors, employees, agents, and representatives ("***Hertz Released Parties***"), from any and all claims, demands, causes of action, liabilities, damages, losses, costs, and expenses of any kind or nature, whether known or unknown, suspected or unsuspected, against the Hertz Released Parties accruing prior to the Plan's Effective Date based on or relating to, in whole or in part, the events leading to the Debtor's chapter 11 case, the Debtor's chapter 11 case, and the Master Services Agreement between the Debtor and Hertz, as amended, all related contracts and amendments thereto.

10.6.~~10.5.~~***Injunction.*** Except as otherwise provided in the Plan or the confirmation order, all Releasors are permanently enjoined, restrained and precluded, from asserting, commencing or continuing in any manner any action, encumbrance, lien, setoff, claim, or right of recoupment, against the Debtor, the Reorganized Debtor or any property of the foregoing, related in any manner to any matter occurring prior to the Plan's effective date.

10.7.~~10.6.~~***Exculpation.*** The Debtor, the Reorganized Debtor, Rocky Eastland, the Law Firm, William Avellone, and Ira Bodenstein neither have nor will incur any liability to any person for any act taken or omitted to be taken from the Petition Date through the Plan's effective date, in connection with or related to the administration of the case, the solicitation of votes on, or the negotiation,

preparation, formulation, solicitation, dissemination, implementation, confirmation of the Plan, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with this case or the Plan; provided, however, that the foregoing exculpation shall not apply to any acts of gross negligence or willful misconduct.

## ARTICLE 11.VOTING AND EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS.

11.1.***Impaired Classes to vote.*** Holders of allowed claims in Classes 1, 2 and 3, as impaired classes of claims under the Plan, are entitled to vote to accept or reject this Plan. Class 4, left unimpaired by the Plan, is not entitled to vote because the Holders therein are conclusively presumed to have accepted the Plan under § 1126(f) of the Code. For purposes of voting to accept or reject this Plan, a person is a Holder as of the Voting Record Date. A Holder of an allowed claim as of the Voting Record Date may vote to accept or reject this Plan. A Holder of a claim as to which an objection has been filed that has not been temporarily allowed for purposes of voting on this Plan may not vote.

11.2.***Acceptance by Classes of Claims or Interests.*** A class of claims or interests has accepted this Plan if votes are cast to accept the Plan by at least two-thirds in amount and more than one-half in number of the allowed claims in the Class actually voting to accept or reject this Plan.

11.3.***Section 1191(b) non-consensual confirmation.*** To the extent necessary, the Debtor will request that the court confirm the Plan notwithstanding the requirements of § 1129(a)(8), (10), and (15) of the Code, because the Plan does not discriminate unfairly, and is fair and equitable with respect to the treatment of any dissenting Class of claims, in accordance with the requirements of § 1191(b) of the Code. The Debtor asserts that this Plan provides for fair and equitable treatment of all Classes of claims.

## ARTICLE 12.CONDITIONS TO CONFIRMATION AND EFFECTIVENESS.

12.1.***Conditions to confirmation.*** The following are conditions precedent to confirmation of the Plan unless waived by the Debtor: (i) the confirmation order is in a form and substance reasonably acceptable to the Debtor; and (ii) the confirmation order provides for the transfer of the assets to the Reorganized Debtor free and clear from any claims, except as provided in this Plan.

12.2.***Effective Date.*** The Plan's effective date is a date selected by the Debtor at least 14 days after the Plan is confirmed and on which (a) the confirmation order has become a final non-appealable order, and (b) all conditions to the effectiveness of this Plan have been satisfied or waived as provided in this Plan.

12.3. ***Conditions to Occurrence of the Effective Date.*** The Plan will not become effective unless and until (i) the Plan has been confirmed and the confirmation order, in a form consistent with the requirements of the Plan, has become a final non-appealable order, and (ii) all actions, documents, and agreements necessary to implement the provisions of the Plan are reasonably satisfactory to the Debtor, and such actions, documents and agreements have been effectuated or executed and delivered.

12.4. ***Waiver of conditions.*** The conditions to the confirmation and consummation of this Plan and the occurrence of the Plan's effective date, as set forth in this Plan, may be waived in whole or in part by the Debtor.

## ARTICLE 13. RETENTION OF JURISDICTION.

13.1. ***Jurisdiction.*** Until the Case is closed, the Court will retain jurisdiction as is legally permissible under applicable law, including under §§ 105(a) and 1142 of the Code, including that jurisdiction necessary to ensure that the purpose and intent of this Plan are carried out and to hear and determine all claims and interests and objections thereto that could have been brought before the entry of the confirmation order. The Court will retain jurisdiction to hear and determine all matters with respect to claims against and interests in the Debtor and to enforce all Retained Actions that may exist on behalf of the Debtor or its Estate, over which the Court otherwise has jurisdiction, including the Retained Actions. Nothing contained in this Plan shall prevent the Reorganized Debtor from taking any action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

13.2. ***Examination of Claims and Interests.*** Following the date the Plan is confirmed, the Court will retain jurisdiction to decide disputes concerning the classification and allowance of any claim or interest and the re-examination of claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to claims. The failure by the Debtor to object to, or to examine, any claim for the purposes of voting will not be deemed a waiver of the Debtor's right or the right of the Reorganized Debtor to object to, or to re-examine, the claim in whole or in part.

13.3. ***Determination of disputes.*** The Court will retain jurisdiction after the date the Plan is confirmed to determine all: (i) questions and disputes regarding title to the assets of the Debtor; (ii) disputes concerning the allowance of claims and interests; and (iii) all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the date the Plan is confirmed, in which the Debtor or Reorganized Debtor seek to recover assets or otherwise pursue their rights pursuant to the provisions of the Code.

13.4. ***Additional retention of jurisdiction.*** The Court will retain jurisdiction after the Plan's effective date for the following additional purposes:

13.4.1.  To hear and determine any modification of this Plan pursuant to § 1127 of the Code, to cure any defect or omission or reconcile any inconsistency in this Plan or any order of the Court, including the confirmation order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

13.4.2.  To ensure the performance by the Reorganized Debtor of its obligations to make distributions under this Plan;

13.4.3.  To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of this Plan and the transactions contemplated thereunder, the confirmation order, or any other order of the Court, or to maintain the integrity of this Plan following confirmation;

13.4.4.  To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of this Plan, the confirmation order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

13.4.5.  To construe and apply any findings of fact or conclusions of law made in the confirmation order;

13.4.6.  To adjudicate matters arising in the case, including matters relating to the formulation and consummation of this Plan;

13.4.7.  To enter any orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Debtor or the Reorganized Debtor and to impose any limitations, restrictions, terms, and conditions on the title, rights, and powers as the Court may deem necessary;

13.4.8.  To hear and determine any dispute involving or affecting the validity and enforceability of the discharges, releases, injunctions, and exculpatory relief set forth in this Plan;

13.4.9.  To enter a final decree closing the case;

13.4.10.  To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the confirmation order as may be necessary to carry out the purposes and intent of this Plan;

13.4.11.  To enter, implement, or enforce such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked, modified, or vacated;

13.4.12.  To hear and allow applications for fees and expenses of professionals pursuant to §§ 330, 331, 503(b), 1103, and 1129(a)(4) of the Code;

13.4.13.  To adjudicate any adversary proceedings brought by the Debtor or the Reorganized Debtor, whether or not such adversary proceedings have been commenced before or after the Plan's effective date;

13.4.14.  To decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of this Plan;

13.4.15.  To decide issues concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Code;

13.4.16.  To adjudicate any issues concerning assumption or rejection of any executory contracts and unexpired leases, including any disputes concerning rejection damage claims or cure claims;

13.4.17.  To hear and determine any and all objections to any claims, including administrative expense claims, or interests, including the allowance, classification, priority, secured status, compromise, estimation, or payment thereof;

13.4.18.  To hear and determine any litigation or causes of action belonging to the Debtor or its successors and assigns, the Estate, or the Reorganized Debtor; and

13.4.19.  To hear and determine any other matter related hereto and not inconsistent with the Code and title 28 of the United States Code.

13.5. *Abstention.* If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the reorganization case, including the matters set forth in this Plan, the Plan's retention of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 14.MISCELLANEOUS.

14.1. *Notices.* All notices in connection with this Plan, including any notices concerning a change of address for a Holder of a claim or interest, should be delivered by overnight mail or United States certified mail, postage prepaid, return-receipt requested, addressed to the Debtor, prior to the Plan's effective date, or to the Reorganized Debtor, after the Plan's effective date, at the following addresses:

*To Debtor:*
R.A.R.E. Corporation
c/o Rocky Eastland

PO Box 256
Laveen, AZ 85339

*To Reorganized Debtor:*
R.A.R.E. Corporation
c/o Rocky Eastland
PO Box 256
Laveen, AZ 85339

*With a copy to:*
Lars A. Peterson
FactorLaw
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel: 312-967-8840
Fax: 847-574-8233
Email: lpeterson@wfactorlaw.com

14.2. ***Asserting and curing defaults under the Plan.*** If the Debtor or Reorganized Debtor defaults under the provisions of this Plan, any creditor or party in interest wishing to assert a default shall provide the Reorganized Debtor with written notice of the alleged default. The Reorganized Debtor has 30 days from receipt of written notice to cure the alleged default.

14.3. ***§ 506(a) motion.*** This Plan shall constitute a motion to determine the allowed secured claim of any entity claiming a lien on any of the Debtor's assets.

14.4. ***Compliance with tax requirements.*** In connection with this Plan, the Reorganized Debtor will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions will be subject to the withholding and reporting requirements.

14.5. ***Modification or revocation of this Plan.***

14.5.1. *Generally.* Subject to the restrictions on plan modifications set forth in § 1193 of the Code, the Debtor and the Reorganized Debtor, as applicable, each reserves the right to alter, amend, withdraw or modify the Plan.

14.5.2. *With Consent.* Notwithstanding anything herein to the contrary, after the Plan's effective date and substantial confirmation of the Plan, the Reorganized Debtor may modify the treatment provided under this Plan to any lass of claims or interests, provided that the Holders of claims or interests in such Class approve the modification in a writing sent to all Holders of claims or interests in such Class that sets forth the proposed modification (the "***Modification Notice***"). The Debtor shall have obtained consent to a proposed Plan modification if a

majority of Holders of the claims or interests in each affected Class approve the modification in writing and such majority accounts for more than 66% of the value of the claims in the affected Class or Classes.

14.5.3. *Ancillary documents.* Notwithstanding any reference herein to documents in any forms annexed to this Plan, and without limiting the preceding paragraph, the Debtor may revise those forms by filing such revised forms with the Court on or prior to the date the Plan is confirmed.

14.6. ***Effect of withdrawal or revocation of the Plan.*** If the Debtor revokes or withdraws this Plan before the date the Plan is confirmed, or if the Plan is not confirmed or the Plan's effective date does not occur, then this Plan will be null and void. In such event, nothing contained in this Plan will be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

14.7. ***Due authorization.*** Each and every Holder of an allowed claim who elects to participate in the distributions provided for in this Plan warrants that it is authorized to accept the distributions provided for in this Plan in consideration of such claim or interest and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

14.8. ***Implementation.*** The Debtor and Reorganized Debtor will be authorized and directed to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan.

14.9. ***Term of injunctions or stays.*** All injunctions or stays provided for in the Case under §§ 105 or 362 of the Code or otherwise, and extant on the date the Plan is confirmed (excluding any injunctions or stays contained in this Plan or the confirmation order), will remain in full force and effect until the Plan's effective date unless otherwise provided herein or in the confirmation order.

14.10.  ***Integration clause.*** This Plan constitutes a complete, whole, and integrated statement of the binding agreement among the Debtor, each of the Holders of claims or interests, their respective successors and assigns, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.11.  ***Headings.*** The headings in this Plan are for convenience of reference only, and shall not limit or otherwise affect the meanings of this Plan.

14.12.  ***Severability of Plan provisions.*** If any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable before the date the plan is confirmed, the Court, at the request of the Debtor, will have the power to alter and interpret the term or provision to make it valid or enforceable to the

maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation. The confirmation order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.13. ***Governing law.*** Unless a rule of law or procedure is supplied by federal law (including the Code and the Bankruptcy Rules), the laws of the State of Illinois govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and any corporate governance matters and causes of action arising under state law with respect to the Debtor, without giving effect to the principles of conflicts of law thereto.

14.14. ***Computation of time periods.*** If any deadline established pursuant to this Plan falls on a Saturday, Sunday or Federal holiday, the deadline shall be automatically extended to the following business day without further order of the Bankruptcy Court. The provisions of Bankruptcy Rule 9006(a) otherwise govern the computation of any applicable time period under this Plan.

Dated: ~~July 11~~August 27, 2025        Respectfully submitted,

                                         **R.A.R.E. Corporation**

                                         By: /s/ Lars A. Peterson
                                         One of Its Attorneys

William J. Factor (6205675)
Lars A. Peterson (6293551)
**FACTORLAW**
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel:      (312) 878-6976
Fax:      (847) 574-8233
Email:   wfactor@wfactorlaw.com
         lpeterson@wfactorlaw.com

# EXHIBIT A

## LIQUIDATION ANALYSIS

| Asset | Estimated Liquidation Value | |
|---|---|---|
| Cash and equivalents | $ | 7,063.42 |
| Accounts receivable | $ | - |
| Inventory and Equipment | $ | 2,300.00 |
| *Total assets at liquidation value:* | *$* | *9,363.42* |
| | | |
| Less: | | |
| Priority claims (est) | $ | (664.00) |
| Secured claims | $ | (50,649.40) |
| Administrative claims, including claims of the chapter 7 trustee (est.) | $ | (90,000.00) |
| *Subtotal:* | *$* | *(141,313.40)* |
| *Balance for unsecured creditors:* | *$* | - |

| | | |
|---|---|---|
| Estimate of total dollar amount of Allowed Unsecured Claims (approximate) | $ | 1,000,000.00 |
| **Percentage of claims unsecured creditors will receive in a chapter 7 liquidation** | | **0%** |
| **Percentage of claims unsecured creditors will receive under the Plan** | | **4.9%** |

# EXHIBIT B

## PROJECTED FINANCIAL INFORMATION

| Annual Budget | Plan Year 1 | Plan Year 2 | Plan Year 3 | Plan Year 4 | Plan Year 5 | Total |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Revenue from Hertz* | $ 1,551,998.69 | $ 1,551,998.69 | $ 1,551,998.69 | $ 1,551,998.69 | $ 1,551,998.69 | |
| **Expenses** | | | | | | |
| Payroll | $ 1,370,000.00 | $ 1,370,000.00 | $ 1,370,000.00 | $ 1,370,000.00 | $ 1,370,000.00 | |
| Payroll Processing Fees | $ 17,836.00 | $ 17,836.00 | $ 17,836.00 | $ 17,836.00 | $ 17,836.00 | |
| Hotel (R. Eastland onsite lodging) | $ 41,600.00 | $ 41,600.00 | $ 41,600.00 | $ 41,600.00 | $ 41,600.00 | |
| Insurance | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | |
| Rent (office space) | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | |
| Professional Services | $ 29,000.00 | $ 29,000.00 | $ 29,000.00 | $ 29,000.00 | $ 29,000.00 | |
| Contingency Reserve | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | |
| **Subtotal** | **$ 1,493,436.00** | **$ 1,493,436.00** | **$ 1,493,436.00** | **$ 1,493,436.00** | **$ 1,493,436.00** | |
| Disposable Income | $ 58,562.69 | $ 58,562.69 | $ 58,562.69 | $ 58,562.69 | $ 58,562.69 | $ 292,813.45 |

* Revenue estimate based on actual annual revenue 3/1/2024-2/28/2025

| Plan Quarter ("PQ") | | Estimated Plan Distributions | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | PQ1 | PQ2 | PQ3 | PQ4 | PQ5 | PQ6 | PQ7 | PQ8 | PQ9 | PQ10 |
| Quarterly Plan Payment: | | $ 18,019.29 | $ 9,009.64 | $ 13,514.47 | $ 18,019.29 | $ 18,019.29 | $ 9,009.64 | $ 13,514.47 | $ 18,019.29 | $ 18,019.29 | $ 9,009.64 |
| Estimated Claims Pool | | | | | | | | | | | |
| Priority | $ 664.00 | $ 171.22 | $ 171.22 | $ 171.22 | $ 171.22 | $ - | $ - | $ - | $ - | $ - | $ - |
| Admin | $ 90,000.00 | $ 12,500.00 11,000.00 | $ 4,500.00 3,500.00 | $ 8,500.00 7,000.00 | $ 12,500.00 11,000.00 | $ 12,000.00 10,500.00 | $ 4,000.00 3,000.00 | $ 6,000.00 8,500.00 | $ 12,000.00 10,500.00 | $ 12,000.00 10,500.00 | $ 4,000.00 3,000.00 |
| Hertz Cure | $ 95,551.03 | $ 3,000.00 3,500.00 | $ 3,000.00 2,000.00 | $ 4,000.00 3,000.00 | $ 3,000.00 3,500.00 | $ 3,000.00 3,500.00 | $ 3,000.00 2,000.00 | $ 3,000.00 3,000.00 | $ 3,000.00 3,500.00 | $ 3,000.00 3,500.00 | $ 3,000.00 2,000.00 |
| Secured | $ 50,649.40 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 |
| Unsecured | $ 1,000,000.00 | $ 470.15 | $ 460.50 | $ 465.33 | $ 470.15 | $ 1,141.37 | $ 1,131.72 | $ 1,136.55 | $ 1,141.37 | $ 1,141.37 | $ 1,131.72 |

| | PQ11 | PQ12 | PQ13 | PQ14 | PQ15 | PQ16 | PQ17 | PQ18 | PQ19 | PQ20 | Total | Est. % Recovery |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | $ 13,514.47 | $ 18,019.29 | $ 18,019.29 | $ 9,009.64 | $ 13,514.47 | $ 18,019.29 | $ 18,019.29 | $ 9,009.64 | $ 13,514.47 | $ 18,019.29 | 292,813.45 | |
| Priority | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 684.88 | 103.1% |
| Admin | $ 4,000.00 | $ 7,500.00 | $ 2,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 90,000.00 | 100.0% |
| Hertz Cure | $ 7,000.00 3,000.00 | $ 11,000.00 3,500.00 | $ 11,000.00 2,000.00 | $ 4,000.00 | $ 7,000.00 | $ 11,000.00 | $ 11,000.00 | $ 4,000.00 | $ 7,000.00 | $ 6,551.03 | $ 95,551.03 | 100.0% |
| Secured | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 2,877.92 | $ 57,558.40 | 113.6% |
| Unsecured | $ 3,636.55 | $ 4,141.37 | $ 4,141.37 | $ 2,131.72 | $ 3,636.55 | $ 4,141.37 | $ 4,141.37 | $ 2,131.72 | $ 3,636.55 | $ 8,590.34 | $ 49,019.14 | 4.9% |

| Annual Disposable Income | | $ 58,562.69 | |
|---|---|---|---|
| Avg. Quarterly Disposable Income | | $ 14,640.67 | Seasonal Ratio |
| Seasonal QDI | Q1 (Jan., Feb., Mar.) | $ 9,009.64 | 0.50 |
| | Q2 (Apr., May, Jun.) | $ 13,514.47 | 0.75 |
| | Q3 (Jul., Aug., Sep.) | $ 18,019.29 | 1.00 |
| | Q4 (Oct., Nov., Dec.) | $ 18,019.29 | 1.00 |
| Total | | $ 58,562.69 | 3.25 |

# EXHIBIT C

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

- Master Services Agreement effective 11/9/2012, as amended, for Debtor to provide qualified personnel to perform certain transportation, staffing, related services to Hertz Corporation
- NDA dated 3/6/2019 for nondisclosure of business information with Hertz Corporation
- Unwritten lease for office space at 1117 E. 87th St., Chicago, IL 60619 with Allen Quality Investments

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 8/27/2025 2:15:00 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4899-4051-4063/8/Second Amended Plan of Reorganization dated July 9, 2025.docx | |
| **Modified DMS:** nd://4904-0844-6051/2/Third Amended Plan of Reorganization dated August 27 2025.docx | |
| **Changes:** | |
| Add | 10 |
| Delete | 8 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 18 |